Leon MANDEL and Carolina Panerai
Mandel, Petitioners,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 11448.

United States Court of Appeals
Seventh Circuit.

Jan. 13, 1956.

Charles W. Davis, Chicago, Ill., Samuel H. Horne, Washington, D. C., Harry B. Sutter, C. Ives Waldo, Jr., Chicago, Ill. (Hopkins, Sutter, Halls, Owen & Mulroy, Chicago, Ill., of counsel), for petitioners.

H. Brian Holland, Asst. Atty. Gen., George F. Lynch, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Ellis N. Slack, Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and MAJOR and SCHNACKENBERG, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition to review a decision of the Tax Court, entered January 12, 1955, sustaining respondent's determination of deficiencies in petitioners' income tax returns for the years 1948 and 1949.

We think the contested issues are properly stated in respondent's brief. They are as follows:

"1. Whether the Tax Court erred in holding that payments made in 1948 and 1949 by taxpayer to his former wife for the benefit of his children who had attained their majority, in accordance with the terms of a written instrument incident to a divorce, were not taxable to the wife, and hence not deductible by taxpayer within the meaning of Sections 22 (k) and 23(u) of the Internal Revenue Code of 1939.

"2. Whether the Tax Court erred in holding that life insurance premiums paid by taxpayer in 1948 and 1949, in conformity with the separation agreement, were not deductible by taxpayer under Section 23(u) of the Internal Revenue Code of 1939."

Leon Mandel was married to Edna Horn Mandel in 1924, and of such marriage two children were born, a daughter, Noel, on February 8, 1927, and a son, Leon III, on July 31, 1928. Leon Mandel and Edna Horn Mandel separated in August, 1932. On November 29 of that year they entered into an agreement incident to divorce proceedings, which culminated in a decree entered December 29, 1932, by the Circuit Court of Cook County, Illinois, dissolving their marriage. On April 9, 1938, Leon Mandel married his present wife, Carolina Panerai Mandel, and on January 27, 1946, his former wife, Edna Horn Mandel, married her present husband, George E. Seligmann. (Carolina Panerai Mandel is named as a petitioner only because she and her husband filed joint tax returns for the years in controversy and no further reference need be made to her. Leon Mandel is referred to as the petitioner or taxpayer; Edna Horn Mandel Seligmann is referred to as Edna.) Noel was married on January 17, 1948, and became twenty-one years of age on February 8, 1948; Leon III became twenty-one years of age on July 31, 1949, and thereafter neither of the children resided or made their home with their mother, Edna.

During the taxable years of 1948 and 1949, petitioner paid to Edna, as specified in the separation agreement, amounts which were paid by her in equal parts, either directly or by deposit in their bank accounts, to the two children for the months after they reached their majority. Petitioner in his income tax returns for the years in controversy claimed such payments as deductions, which respondent denied. It is this denial which forms the basis for the first contested issue.

Petitioner, also for the years in controversy, paid certain insurance premiums in accordance with the terms of the separation agreement. In his income tax returns for those years, he also claimed these payments as deductions, which were denied by respondent. It is this denial which forms the basis for the second contested issue.

If petitioner is entitled under the first contested issue to the deductions claimed, it is by reason of Section 23(u) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 23, which provides for deductions from gross income:

"In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. * * *"

As petitioner concedes in his brief:

"The deductibility of the payments here in question by the husband, Leon Mandel, therefore, depends on whether the payments are such as are includible in the gross income of his divorced wife, Edna Horn Seligmann, under section 22(k) of the Code."

The material portions of Section 22 (k), 26 U.S.C.A. § 22, are as follows:

"In the case of a wife who is divorced or legally separated from her husband under a decree of divorce * * *, periodic payments * * * received subsequent to such decree in

discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce * * * shall be includible in the gross income of such wife * * *. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. * * * "

On the second contested issue, petitioner contends that respondent is estopped from asserting a deficiency based upon the payment by him of insurance premiums because of a decision of the Tax Court which held that such payments made during previous years under the separation agreement and for the same purpose were deductible by petitioner.

A decision of the questions presented requires a consideration and to some extent an interpretation of relevant provisions of the separation agreement. Prior to such consideration, however, it appears important to take note of two previous decisions of this court.

The agreement, by section 1, obligated petitioner to pay Edna $18,000 per annum, in monthly installments of $1,500, for the support and maintenance of herself and the two children. It was at one time contended by petitioner that he was entitled to deduct such payments in their entirety, on the theory that the agreement did not designate any part of such payments as support for the children. The Commissioner's refusal to allow such deduction was sustained by the Tax Court, which decision was affirmed by this court. Mandel v. Commissioner, 7 Cir., 185 F.2d 50. In doing so we held at page 52 that " * * * the agreement as a whole sufficiently earmarked and designated $10,000 of each annual payment for the support of the children", and that the children being minors, said amount was not includible in the gross income of

Edna and, therefore, was not deductible by the husband under 23(u). It followed from that decision that of the payments which petitioner was required to make annually, $8,000 was for the support of Edna, which she was required to include in her gross income under 22(k), and for which petitioner was entitled to a deduction under 23(u). The income tax rights and liabilities of the two parties were thus determined, subject to alteration by the happening of contingencies which followed in the separation agreement, to which we shall subsequently refer.

This court in Seligmann v. Commissioner, 7 Cir., 207 F.2d 489, considered another provision of the same agreement and decided that insurance premiums paid by the husband were not includible in Edna's gross income. In doing so, we reversed the decision of the Tax Court. We note that the Tax Court concedes the correctness of this holding, which it has since followed. Petitioner claims the right to deduct for the years here involved the insurance premiums held not includible in Edna's gross income for the years there involved.

By the agreement Edna was awarded custody of the children, and petitioner, in addition to the obligation previously shown, agreed to pay certain designated amounts not here involved for hospital, dental and medical expenses. The material provisions of the agreement relative to the first contested issue are found in section 3, the paragraphs of which we shall for convenience designate alphabetically:

"(a) In consideration of the payments made by the husband to the wife, she agrees to provide a home for the children with her and agrees to provide reasonable and proper maintenance and support for the children, and upon the same scale as she may be living.

"(b) In the event of the divorce of the wife from the husband, and her subsequent remarriage to a person other than the husband, the monthly payments by the husband to her

shall be reduced to Eight Hundred Thirty-three Dollars and Thirty-three Cents ($833.33) per month, exclusive of payments which the husband shall make for the medical and dental services, costs of education, clothing and transportation of the children, as hereinabove provided. In consideration of these payments, the wife shall continue to provide a home for the children with her and agrees to provide reasonable maintenance and support for the children, as aforesaid.

"(c) In the event a child shall marry, or, after reaching twenty-one (21) years of age, shall live separate and apart from the wife, then the husband shall have the right in his discretion to pay such child upon the happening of either of these events, the sum of Four Hundred Sixteen Dollars and Sixty-six Cents ($416.66) per month, or any portion thereof from time to time, and thereafter the payments by the husband to the wife shall be reduced by the amount which the husband pays to such child, but only up to Four Hundred Sixteen Dollars and Sixty-six Cents ($416.66) per month; and after the wife's death, the husband agrees to pay to each child, for and during the life of such child, the sum of Four Hundred Sixteen Dollars and Sixty-six Cents ($416.66) per month; and if such child shall have an income from any estate, gift, trust or from any inheritance, then the amount of such income received by such child therefrom, (up to the sum of Four Hundred Sixteen Dollars and Sixty-six Cents ($416.66) per month) may be deducted from the payments made to such child by the husband.

"(d) In the event that the wife shall remarry and in the event thereafter a child after reaching the age of sixteen (16) years, shall live separate and apart from the wife, then until such child shall marry or reach the age of twenty-one (21) years, the husband shall have the right in his discretion to pay to such child the sum of Two Hundred Eight Dollars and Thirty-three Cents ($208.33) per month or any portion thereof from time to time until such child shall marry or shall reach the age of twenty-one (21) years, and the payments by the husband to the wife hereunder shall be reduced by the amount which the husband pays to such child, but only up to said sum of Two Hundred Eight Dollars and Thirty-three Cents ($208.33) per month.

"(e) In the event that at any time hereafter, income shall be paid to the wife out of and from any inheritance, gift, trust or estate established or created for the benefit and use of either child, then the amount received by the wife for the use of the child from the income of such estate, gift, trust or inheritance (established or created for the benefit of such child) shall be deductible from the amount to be paid to the wife by the husband, but only to the extent of Four Hundred Sixteen Dollars and Sixty-six Cents ($416.66) per month for each child for whom such income is so received by the wife for the use of such child.

"(f) In the event of the death of a child, the monthly payments to the wife shall be reduced Four Hundred Sixteen Dollars and Sixty-six Cents ($416.66) for each such child so dying."

The Tax Court in its opinion made what we think is a correct summation of the third section of the agreement, as follows:

"Petitioner not only undertook to provide support and maintenance for his wife until she remarried, and for his minor children until they reached their majority; he undertook to provide the children with a substantial monthly income for the rest of their lives. The petitioner, however, reserved options as to the specific man-

ner in which payments for the children might be made. Generally, they were to be made to Edna, but if the children married or if, after becoming 21 years of age, they maintained residences separate and apart from Edna, then petitioner could make the payments directly to them. The Agreement also provided that even·after a child's 16th birthday, if he or she were married or lived apart from Edna, one-half of the amount for such child's support might be paid directly by petitioner to that child."

Petitioner's argument, stated in various ways, is in our judgment based upon the fallacious premise that Edna was under no obligation during the taxable years to pay over any amount to the adult children, that all or at least a portion of such payments were available for her use and are, therefore, includible in their entirety in her income under 22(k). In our judgment the agreement is not susceptible to such a construction. It provides in the separate paragraphs for a number of contingencies. We think it plain that the obligation imposed by 3(a) related to the maintenance and support of the children during their minority. By paragraph (b), petitioner was obligated to make payments to Edna subsequent to her remarriage only in the amount of $833.33 per month ($10,000 per annum, which this court held in the previous Mandel case was earmarked for the maintenance and support of the children). Payments under this contingency evidently were for the maintenance and support of the children by Edna, during the period of their minority. Paragraph (c) made specific provision for the children upon marriage or upon reaching the age of twenty-one years. In that contingency, however, the husband reserved the right to make such payments ($416.66 to each child) directly to the child, providing such child was living separate and apart from Edna, and further agreed, in the event of the death of Edna, to pay the same amount to each child during his or her lifetime.

■ Thus, paragraph (c) explicitly covers the situation under consideration. Edna was remarried, the children had arrived at the age of twenty-one years during the taxable years in controversy, Noel was married, and both were living in their own homes separate and apart from Edna. Under this contingency, petitioner was obligated only to pay the designated amounts, with the discretion to make such payments to Edna on behalf of the children or to make them directly to the children. The Tax Court, referring to the payments in controversy, found, "No part of such payments was for her support or maintenance." We entertain no doubt as to the validity of this finding.

Paragraphs (d), (e) and (f) are without significance in connection with the instant situation other than that they reinforce our analysis of paragraph (c). Especially is this so as to paragraph (f), which provides that upon the death of a child the payments to the wife shall be reduced in the amount of $416.66, from which it follows that upon the death of both children petitioner's obligation to make payments would cease. This, to our minds, is an irrefutable recognition of the fact that no part of such payments belonged to Edna or were for her benefit.

In résumé, of the $18,000 which petitioner was obligated to pay annually, $8,000 was for the support and maintenance of Edna and $10,000 was for the support and maintenance of the two children during the period of their minority (this amount was payable at the rate of $833.33 per month, $416.66 for each child). These payments to Edna for the support and maintenance of the minor children, by reason of a provision contained in 22(k), did not taxwise affect either petitioner or Edna. Upon Edna's remarriage, petitioner's obligation to pay $8,000 annually for her support and maintenance ceased. Petitioner, however, was still obligated to make payments to her for the support and maintenance of the children until they reached their majority. Upon the happening of that event, petitioner was obligated to make such payments for the benefit of the

children, with the discretion to do so either to Edna for and on behalf of the children or directly to them. This obligation was to be terminated on the death of the children.

■■ In our view, the analysis which we have made of the situation completely refutes petitioner's contention that Edna acquired any right, claim or interest in the payments in controversy and that she was clearly obligated to do what she did, that is, turn such payments over to the children, to whom they belonged. We further are of the view that there is no logical theory or legal basis for holding that such payments should be included in the gross income of Edna under 22(k). So far as we are advised, the word "income" as used in that section has the same meaning and possesses the same attributes as it does in other provisions of the Revenue Act.

Courts have often been called upon to consider what constitutes income for income tax purposes. In Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 407, 66 S.Ct. 546, 548, 90 L.Ed. 752, the court stated:

> "The very essence of taxable income, as that concept is used in Section 22(a), is the accrual of some gain, profit or benefit to the taxpayer."

The court on the following page, after pointing out a number of factors which might be material, concluded by stating:

> "But apart from such factors the bare receipt of property or money wholly belonging to another lacks the essential characteristics of a gain or profit within the meaning of Section 22(a)."

In Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 283, 66 S.Ct. 532, 534, 90 L.Ed. 670, the court cited Helvering v. Horst, 311 U.S. 112, 119, 61 S. Ct. 144, 85 L.Ed. 75, in connection with the following statement:

> "And we have held that the dominant purposes of all sections of the revenue laws, including these, is 'the taxation of income to those who

earn or otherwise create the right to receive it and enjoy the benefit of it when paid.' "

In Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 181, 65 S.Ct. 591, 593, 89 L.Ed. 830, the court stated:

> "Section 22(a) of the Revenue Act is broad enough to include in taxable income any economic or financial benefit * * *, whatever the form or mode by which it is effected."

See also our opinion in the Seligmann case, 207 F.2d 489, 492, wherein we discussed the cases and concluded that "economic gain" is a prerequisite to the right to tax.

No legal obligation to support the children after they arrived at their majority was imposed upon Edna. The payments in controversy made to her thereafter were for and on their behalf and represented no economic or financial gain or benefit to her. We conclude that they were not includible in her gross income under 22(k). It follows that petitioner was not entitled to a deduction of such payments under 23(u).

Perhaps we should not leave this aspect of the case without some comment on other facets of petitioner's argument, although we think that they in the main have been disposed of by our previous discussion. Petitioner emphasizes a provision in the agreement as follows:

> "All sums payable by the husband to the wife hereunder may be recoverable by the wife by suit from time to time as they become due, together with her reasonable attorneys' fees and expenses incurred in that behalf."

The idea appears to be that Edna was expressly given a right to sue for the payments in controversy and it follows that they were made for her benefit. Assuming that she had such a right, which we doubt, it is clear that she could not have compelled petitioner to make the payments to her for her benefit because he had reserved the right, in his discretion, to make them directly to the children.

Petitioner places great reliance upon Section 29.22(k)–1(d) of the Treasury Regulations, which provides:

"Except in cases of a designated amount or portion for the support of the husband's minor children, periodic payments described in section 22(k) received by the wife for herself and any other person or persons are includible in whole in the wife's income, whether or not the amount or portion for such other person or persons is designated."

That such reliance is ill-founded is evident from our previous discussion. The involved payments were not "received by the wife for herself and any other person or persons." They were received by her solely for and on behalf of the adult children. As we have shown, she had no interest in such payments; they were not made for her benefit or use.

Petitioner, in support of his position, cites Feinberg v. Commissioner, 3 Cir., 198 F.2d 260, and a number of Tax Court decisions, the most important of which is Robert Lehman, 17 T.C. 652. The Tax Court in the instant case distinguished Feinberg as well as its previous decisions. Feinberg furnishes doubtful support for petitioner's position. In any event, we do not agree with the statement which the court made 198 F.2d at page 263 and upon which petitioner relies. A more important case is Lehman, decided by the Tax Court in 1951. There, by a separation agreement prior to divorce, the husband obligated himself to pay his wife $20,000 annually as long as she lived and remained unmarried, and to pay his wife's mother $5,000 annually for life "for and in behalf of the wife." The agreement contained a recital that the wife was the sole support of her mother, for whom she desired to make provision. Payments were made by the husband as agreed, that is, $20,000 annually to the wife and $5,000 annually to the latter's mother. The Tax Court held that the $5,000 payments were constructively, even though not actually, received by the wife, that such payments were includible in the wife's gross income, and

as a consequence the husband was entitled to their deduction. The difference between that case and this, while not great, is such that it is distinguishable. There, the payments to the mother were made, as the agreement recited, "for and in behalf of the wife." In the instant case, the payments were not made for and in behalf of Edna; they were made for and in behalf of the children. Moreover, in the Lehman case the agreement recited that the wife was the sole support of her mother, while in the instant case Edna was under no obligation, by agreement or otherwise, to support her children after they arrived at their majority. In the Lehman case the wife was relieved of the agreed obligation to support her mother and, therefore, by such payments realized an economic benefit. In the instant case, Edna was under no such obligation and realized no benefit or economic gain from payments made to her on behalf of the adult children. In any event, if we assume, as petitioner contends, that the Lehman case is in point, it must be remembered that it was decided by the same court which decided the instant case, and we see no reason why we should embrace the former decision and reject the later.

The second contested issue involves insurance premiums which petitioner paid annually on two ordinary life insurance policies on his own life, deposited with a trustee. Petitioner's obligation in this respect arises by reason of section 4 of the separation agreement. (This section is set forth in Seligmann v. Commissioner, 207 F.2d 489, 491, to which reference is made.) In an opinion rendered May 6, 1949, the Tax Court held that petitioner was entitled to deduct the premiums thus paid for the years 1942 and 1943, under Sections 22(k) and 23(u). No review of this ruling was sought by the Commissioner, although petitioner sought review from another part of the same decision, which culminated in our decision in Mandel v. Commissioner, 7 Cir., 185 F.2d 50.

Petitioner makes no attempt to sustain the validity of the previous decision of

the Tax Court but urges here, as he did in the Tax Court, that under the doctrine of collateral estoppel the prior judgment of that court is conclusive and that the Commissioner was thereby precluded in the instant situation from denying the right to deduct such premium payments.

On the other hand, the Commissioner does not and could not dispute but that the factual situation relative to these payments is identical with that upon which its previous decision was based. In both cases such payments were made in discharge of the same obligation, incurred by reason of the same agreement, and were for premiums on the same policies of insurance. Respondent, however, contends that by reason of our decision in Seligmann v. Commissioner, 207 F.2d 489, there has been a change or development of the controlling legal principles given effect by the Tax Court in its previous decision. In Seligmann we held that the premium payments for which petitioner now claims the right to deduct were not includible in the gross income of his former wife, Edna. Inasmuch as the right to deduct payments by the husband under 23(u) is dependent upon the obligation of the former wife to include them in her gross income, it is not open to dispute, in view of our decision in Seligmann, that petitioner is not entitled to such deductions.

The incongruity of the situation with which we are confronted is disturbing. First, the Tax Court held that the premium payments were deductible by petitioner, from which it reasoned that they were includible in Edna's gross income. Later, the Tax Court so held and this court reversed, holding that they were not includible in her income. Now, because of that holding in which the Tax Court acquiesces, the Tax Court holds, contrary to its previous decision, that the payments are not deductible by petitioner. In Holt v. Commissioner and Commissioner of Internal Revenue v. Holt, 2 Cir., 226 F.2d 757, 758, the court, referring to a similar situation, stated:

"We seem to play at hide-and-go-seek with the Tax Court in these alimony cases."

In Seligmann, relative to this awkward situation, we stated, 207 F.2d at page 495:

"We would think that the regrettable situation which has developed could have been avoided by making petitioner a party to the proceeding in the Tax Court between the Commissioner and the husband so that the rights of both parties could have been adjudicated at the same time."

In this connection it is interesting to note that in the lastly cited Second Circuit case both the taxpayer and his former wife were before the Tax Court and that there were before the Court of Appeals two petitions for review, one by the taxpayer, the other by the Commissioner.

We are required, however, to face the situation as it is presented. Respondent in opposing the application of the doctrine of collateral estoppel relies heavily upon Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; in fact, petitioner purports to find comfort in that opinion. Petitioner places much reliance upon the decision of this court in Lynch v. Commissioner, 7 Cir., 216 F.2d 574, where we applied the doctrine of collateral estoppel in favor of the taxpayer. In that case we made a rather exhaustive analysis of the cases which had treated of that doctrine, including the Sunnen decision, and we think no good purpose could be served in retreading the ground there covered. In that case, as here, the Commissioner contended that there had been an alteration in applicable legal principles due to certain decisions of the Supreme Court so that the Tax Court was free to refuse to apply the doctrine. The alteration relied upon appeared in statements made by the Supreme Court which we concluded had not changed any legal principle. We, therefore, rejected the Commissioner's contention.

The instant situation, however, is distinguishable from Lynch in that here we have an adjudication by this court that the insurance premiums paid by petitioner were not includible in Edna's gross income. The legal principle which emerges from that holding arises from the nature of the statute which makes petitioner's right to deduct depend upon Edna's obligation to include. It necessarily follows that with no obligation on her part to include there is no right on his part to deduct.

The Supreme Court in Sunnen stated, 333 U.S. at page 599, 68 S.Ct. at page 720:

"And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged."

While the controlling facts here are the same as those before the Tax Court, upon which it predicated its previous decision, we do not think it can be said that there has been no change in the legal principle applicable to such facts. Its previous decision was predicated on the principle that petitioner was entitled to deduct because Edna was required to include. That principle, however, was rejected by this court in Seligmann, which held that Edna was not required to include. The legal principle deductible from that holding is that petitioner is not entitled to deduct because Edna is not required to include.

We recognize that this issue presents a difficult problem. We are not convinced, however, that the Tax Court erred when it refused to apply in favor of petitioner the doctrine of collateral estoppel.

The decision of the Tax Court upon both issues is, therefore,

Affirmed.

SCHNACKENBERG, Circuit Judge (concurring).

On May 6, 1949, the Tax Court decided that Leon Mandel was entitled to deduct premiums paid by him in the years 1942 and 1943 on the policies in question. On January 12, 1955, the same court, on the same facts, held that he was not entitled to make such deductions for the years 1948 and 1949. In the interim we decided Seligmann v. Commissioner of Internal Revenue, 7 Cir., 207 F.2d 489, and there held that, whatever right the divorced wife of Mandel had or acquired by virtue of these policies, the value of this right could not be included in her taxable income. In so doing, we pointed out at page 492, that we were "aware of no case where a court of review has considered whether the payments of insurance premiums by a husband for the benefit of the wife were alimony payments and, therefore, income within the meaning of the relevant section." We then proceeded to consider various cases, and found that they "teach that realization of taxable gain must occur in the year during which it is sought to be taxed." Applying the rationale of those cases to the Seligmann case, we considered what rights the divorced wife had under the policies. We concluded, for the reasons there stated, "Mere peace of mind or the satisfaction which stems from knowledge that protection may be of benefit in the future does not constitute taxable economic gain."

Our conclusion was a statement of a principle of law. That principle is different from that upon which the Tax Court decided Leon Mandel's case on May 6, 1949. Our decision in Seligmann was announced on October 19, 1953. It constituted a change or development in the controlling legal principles and made obsolete or erroneous the Tax Court decision of May 6, 1949. Therefore, the doctrine of estoppel by judgment is not available to Mandel in the case at bar. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, at page 599, 68 S. Ct. 715, 92 L.Ed. 898.