RANDAL W. CLARK, JR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JANICE H. CLARK, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4224–71, 4240–71. Filed June 26, 1972.

*Donald P. Moyers* and *Charles B. Tetrick*, for the petitioner in docket No. 4224–71.

*Maynard I. Ungerman*, for the petitioner in docket No. 4240–71.

*G. Phil Harney* and *Randolph A. Monsur*, for the respondent.

DAWSON, *Judge:* In these consolidated cases the respondent determined the following Federal income tax deficiencies:

| Petitioner | Docket No. | Year | Deficiency |
| --- | --- | --- | --- |
| Randal W. Clark, Jr. | 4224–71 | 1967 | $767.35 |
| Janice H. Clark | 4240–71 | 1967 | 587.60 |

Certain concessions have been made by each petitioner and will be given effect in the Rule 50 computations. The only issue presented for decision is whether $3,000 paid by Randal W. Clark, Jr., to Janice H. Clark in the year 1967 should be included in Janice's gross income for that year under section 71(a), I.R.C. 1954,[1] and allowed as a deduction to Randal under section 215(a) as constituting periodic payments imposed on the husband under a divorce decree or under a written instrument incident to a divorce.

FINDINGS OF FACT

Many of the facts have been stipulated and are found accordingly.

Randal W. Clark, Jr. (herein called Randal), was a legal resident of Tulsa, Okla., when he filed his petition with this Court. Randal filed his individual Federal income tax return for the year 1967 with the district director of internal revenue at Oklahoma City, Okla. On this return he claimed an alimony deduction of $3,000 for various payments, totaling $3,600, made to Janice during 1967.

Janice H. Clark (herein called Janice) was a legal resident of Houston, Tex., when she filed her petition with this Court. Janice filed her individual Federal income tax return for the year 1967 with the district director of internal revenue at Oklahoma City, Okla. On this return she did not include in her gross income any of the payments made to her by Randal in 1967.

Randal and Janice were married on June 6, 1954. They have one child, Paul. In August 1963, Janice instituted divorce proceedings in the District Court of Tulsa County, Okla. The divorce was not contested by Randal and the details of the property settlement and alimony were negotiated over a period of months by his attorney, Jack Hays (who was deceased at the time of the Tax Court trial), and Janice's attorney, Maynard I. Ungerman.

From June 1954 until February 1964 Randal and Janice acquired assets which in the main consisted of a house, furniture, and various business enterprises. The businesses were in financial difficulty and had little value in February 1964.

On or about February 19, 1964, a conference was held by the parties to discuss the divorce settlement. Those present included Janice, Randal, their attorneys, and Randal W. Clark, Sr., Randal's father. The subject of alimony was discussed at the conference and it was agreed that Janice would receive $300 per month alimony for 7 consecutive years and $100 per month child support for Paul. It was further agreed that Janice would receive the house and all the furnish-

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

ings. Randal received his clothing, certain personal items, and some business interests.

The divorce proceeding came on for hearing on February 19, 1964. No testimony was given by the parties. This divorce was granted on the grounds of extreme cruelty and incompatibility by Randal. In accordance with the settlement, a divorce decree was filed on February 24, 1964, which, among other things, provided that Janice be awarded the house, furniture, and alimony from Randal in the sum of $25,200 payable in the amount of $300 per month for a period of 7 consecutive years, with the first installment to be paid March 20, 1964, and a like installment to be paid on the 20th day of each and every succeeding calendar month thereafter until the 84 consecutive monthly installments were paid. The divorce decree was prepared by Maynard I. Ungerman, Janice's attorney.

Pursuant to their prior understanding and oral agreement, Maynard I. Ungerman prepared a letter dated February 21, 1964, which accompanied the proposed divorce decree, and was addressed to Jack Hays, Randal's attorney. That letter reads as follows:

This is to advise you and your client, Mr. Randal Walker Clark, Jr., that in regard to the divorce decree heretofore entered on the 19th day of February, 1964, pertaining to alimony payments, that it is understood and agreed by the plaintiff and her attorneys that in the event the plaintiff should remarry, that the alimony payment of $300.00 per month will automatically be reduced to $50.00 per month for the same period of time remaining under the divorce decree commencing the first day of the month following any remarriage. In the event plaintiff does remarry, either plaintiff or myself will immediately notify your office of same so that this information can be conveyed to Mr. Randal Walker Clark, Jr.

The letter was signed by Maynard Ungerman and Janice H. Clark, but it was not incorporated into the divorce decree.

On February 21, 1964, Maynard Ungerman prepared a second letter to Jack Hays, which was a cover letter to the proposed divorce decree and the letter that altered the proposed alimony payments in the event of remarriage by Janice. The pertinent part of the cover letter states:

Enclosed please find an original and one copy of the proposed Order in the above case, as well as an original and two copies of the letter agreement pertaining to the cessation of alimony. If the above Order is acceptable, please sign same where indicated and mail the original back to our office for filing purposes.

At no time during the 7-year period beginning on February 24, 1964, did Janice remarry.

### OPINION

Randal claimed a deduction of $3,000 on his 1967 Federal income tax return because he thought the payments he made pursuant to his legal obligation under the divorce decree and the modification letter

agreement were periodic alimony payments under section 71(a)(1)[2] of the Code. Janice did not include in her reported gross income on her 1967 Federal income tax return any of the payments made to her by Randal in that year because she considered the payments to be excludable installment payments of a principal sum. Respondent took inconsistent positions in his notices of deficiencies sent to the respective petitioners so that the revenue would be adequately protected. In Janice's case the payments were determined by respondent to be periodic payments of alimony and thus includable in her gross income under section 71(a)(1). In Randal's case the payments were determined by respondent to be nondeductible installment payments of a principal sum under sections 71(c)[3] and 215(a).[4] Respondent is seeking consistent tax treatment in accordance with all the facts and circumstances surrounding this matter. From a position of neutrality at the trial the respondent has shifted in his brief to a position favoring petitioner Randal W. Clark, Jr. Obviously the positions of the two petitioners are antithetical.

In our opinion the resolution of the principal issue here turns on the core question as to whether the modification letter agreement of February 21, 1964, was "a written instrument incident to such divorce" which converted $250 of each monthly payment into a "periodic pay-

---

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.
   (a) GENERAL RULE.—
      (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in dischage of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[3] SEC. 71(c). PRINCIPAL SUM PAID IN INSTALLMENTS.—
      (1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.
      (2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

[4] SEC. 215. ALIMONY, ETC., PAYMENTS.
   (a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deductions shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

ment" as that term is used in section 1.71–1(d)(3) (i) and (ii), Income Tax Regs.[5]

During 1967 Randal made payments totaling $3,600 to Janice. The divorce decree provided that he would pay alimony to Janice in the sum of $25,200 payable at the rate of $300 per month for 7 consecutive years. By a separate written "letter agreement" dated February 21, 1964, it was agreed that the alimony payments would be reduced to $50 per month if Janice remarried during the 7-year period.

Randal contends that $250 of each $300 payment qualifies as a "periodic payment" within the meaning of section 71 and that he is entitled to deduct $3,000 for the taxable year 1967 under section 215(a). In his brief respondent has adopted Randal's position. Janice, on the other hand, takes a contrary view, contending that (1) the "letter agreement" was a unilateral promise without consideration and unenforceable as an anticipatory modification of the divorce decree and (2) the "letter agreement" in no way created a remarriage contingency and was not "a written instrument incident to such divorce."

We agree with petitioner Randal W. Clark, Jr., and sustain his position for the reasons set forth below.

The law is well settled that payments are deductible if made after divorce and pursuant to an agreement incident to divorce even though State law does not permit the alimony provision to be incorporated in the divorce decree. *Thomas E. Hogg*, 13 T.C. 361 (1949); *Tuckie G. Hesse*, 7 T.C. 700 (1946). And the fact that an agreement may not be enforceable under State law does not affect the deduction if the payments are for the support of the wife. *Taylor* v. *Campbell*, 335 F.2d 841 (C.A. 5, 1964); *Scofield* v. *Greer*, 185 F. 2d 551 (C.A. 5, 1950); *Charles Campbell*, 15 T.C. 355 (1950). In the *Taylor* case the Court of Appeals held that certain payments made by the husband to his former wife were for support notwithstanding the fact that there is

---

[5] Sec. 1.71–1(d)(3)(i) and (ii), Income Tax Regs., provides, in pertinent part, as follows:

(3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions:

(a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and

(b) Such payments are in the nature of alimony or an allowance for support.

(ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71(a) regardless of whether—

(a) The contingencies described in subdivision (i)(a) of this subparagraph are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, or

(b) The aggregate amount of the payments to be made in the absence of the occurrence of the contingencies described in subdivision (i)(a) of this subparagraph is explicitly stated in the decree, instrument, or agreement or may be calculated from the face of the decree, instrument, or agreement, or

(c) The total amount which will be paid may be calculated actuarially.

no legal obligation to pay permanent alimony in Texas. Congress intended that amounts paid as alimony should be treated uniformly regardless of the variance in State laws concerning the existence and continuance of the obligation to pay alimony. *Tuckie G. Hesse, supra;* H. Rept. No. 2333, 77th Cong., 2d Sess., 1942–2 C.B. 427; S. Rept. No. 1631, 77th Cong., 2d Sess., 1942–2 C.B. 568.

Based on the testimony and documentary evidence contained in this record as well as the practicalities of the situation, it is our view that the letter agreement of February 21, 1964, was a written instrument incident to the divorce which provided a contingency for the reduction of alimony payments if Janice remarried within the specified period. See and compare *Floyd W. Jefferson*, 13 T.C. 1092 (1949). The inference we draw from the evidence is that the letter of February 21, 1964, embodied the terms of a prior oral agreement or understanding between Randal and Janice and their respective attorneys. A compelling reason for Randal's agreeing to the consent divorce decree was that Janice had agreed to the modification letter creating the remarriage contingency. Probably the only reason why the modification letter was not incorporated in the divorce decree was that Oklahoma law prohibited it at that time. But see *Murphy* v. *McElroy*, 92 P. 2d 369 (Okla. 1939), where it was held that such an agreement is binding on the husband and wife as an enforceable contract and that such an agreement is not contrary to public policy. *Herd* v. *Bilby*, 186 P. 2d 833 (Okla. 1947). The consideration received by Janice for her signing the February 21, 1964, modification letter was that Randal agreed to an uncontested divorce which gave Janice virtually all of the valuable assets and burdened Randal with most of the debts of the marriage as well as the legal obligation to pay alimony. Hence the consideration was clearly the mutual promises and obligations of the parties.

The term "incident to the divorce" has been interpreted to mean incident to the *status* of divorce rather than incident to the *decree* of divorce. See *Holt* v. *Commissioner*, 226 F. 2d 757 (C.A. 2, 1955); *Lerner* v. *Commissioner*, 195 F.2d 296 (C.A. 2, 1952); *Helen Stewart Cramer*, 36 T.C. 1136 (1961). The pertinent agreement does not have to be incorporated in the divorce decree to meet the statutory requirements. Nor does the agreement have to be executed concurrently with the divorce decree if the legal obligation of support has continued from the time of the divorce. See *Newton* v. *Pedrick*, 212 F. 2d 357 (C.A. 2, 1954); *Hollander* v. *Commissioner*, 248 F. 2d 523 (C.A. 9, 1957); *Antoinette L. Holahan*, 21 T.C. 451 (1954).

Section 71(c)(1) provides that installment payments discharging a principal sum payable over a period of less than 10 years are generally not considered periodic payments. There is no dispute here that the

payments in question were to be paid for a maximum period of 7 years. However, an exception to the general rule is found in section 1.71–1(d)(3)(i)(a), Income Tax Regs. Such regulation provides that where payments are to be paid over a period ending 10 years or less from the date of the decree or agreement, the payments will be considered periodic if two conditions are satisfied: (1) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (2) such payments are in the nature of alimony or an allowance for support.

We think both of these conditions are satisfied here. First, the letter agreement dated February 21, 1964, reduced the $300 monthly payment set forth in the divorce decree to $50 per month in the event Janice remarried. This exact contingency is described in the regulation. The payment of $50 per month for 7 years was an amount which could be calculated with certainty at the time the letter agreement was executed, but the payment of any amount in excess of $50 was entirely dependent on whether Janice remarried. In our opinion $250 of each $300 payment constituted a "periodic payment." Second, the divorce decree, the letter agreement, and the background facts indicate that the payments were for the support and maintenance of Janice and were not related in any way to a division of joint property. Paragraph 3 of the divorce decree states that Janice shall be awarded alimony in the sum of $25,200 payable in the amount of $300 per month for a period of 7 consecutive years. Paragraph 4 provides "That in addition to the amount of alimony above provided for and in full satisfaction of all rights which plaintiff might otherwise have to a division, there shall be awarded to plaintiff the real property jointly owned by said parties." It is thus clear that paragraph 3 relates solely to alimony (support and maintenance under Oklahoma law) and that paragraph 4 relates to matters "in addition to" alimony, namely, the division of joint property. Paragraph 4 states that the award of real estate is "in full satisfaction" of all rights which Janice might have to a division of property. If any portion of the alimony was considered a division of property, it would have been so stated in paragraph 3. That was not the case; nor was it the intent of the parties.

The payments made by Randal were for the support and maintenance of Janice and in discharge of a legal obligation because of the marital relationship. Under Oklahoma law Janice was entitled to alimony because the divorce was taken at the fault of Randal. The divorce decree made provisions for alimony in a lump sum, payable in installments in accordance with Oklahoma law. The parties agreed that it was only fair that such support payments should be reduced if Janice should remarry during the 7-year period. The parties entered

into a separate written letter agreement to accomplish what could not be accomplished by the divorce decree. The fact that the payments in the divorce decree were modified by the letter agreement did not change their character as support payments nor alter the fact that they were in discharge of a legal obligation arising out of the marital relationship.

Accordingly, we conclude that $3,000 of the $3,600 paid by Randal to Janice in 1967 is includable by Janice in her gross income for that year under section 71(a)(1) and is deductible by Randal under section 215(a).

To reflect this conclusion on the disputed issue and the concessions made by each petitioner on other issues,

*Decisions will be entered under Rule 50.*