Elmer F. BLANCHARD

v.

UNITED STATES of America.

Civ. No. K-75-1726.

United States District Court,
D. Maryland.

Dec. 30, 1976.

George E. Krouse, Wheaton, Md., for plaintiff.

Jervis S. Finney, U. S. Atty., Gerard P. Martin, Asst. U. S. Atty., Baltimore, Md., Edward J. Snyder, Trial Atty., U. S. Dept. of Justice, Washington, D. C., for defendant.

FRANK A. KAUFMAN, District Judge.

In this case, Blanchard seeks to recover the sum of $9,823.24 paid as additional federal income taxes and interest after assessment by the Government for the tax years 1972 and 1973. The Government counterclaims to recover the sum of $4,078 of additional federal income taxes which it asserts is due from plaintiff for the tax year 1972. Defendant has moved for summary judgment as to both the complaint and counterclaim. There are no contested issues of fact which in any way are material or relevant to the decision herein.[1]

Plaintiff, in 1970, was granted an absolute divorce from his wife by a Maryland state court. That court's decree incorporated a prior written agreement entered into by plaintiff and his then wife which provided, *inter alia*, that the husband pay the wife the sum of $1,800 per month until July 1, 1974, and thereafter the sum of $1,500 per month. Plaintiff claims a deduction for the years 1972 and 1973 for amounts paid to his ex-wife in excess of $1,800 per month.

For each of the years 1972 and 1973, the alimony payments under the agreement and decree amounted to $21,600 ($1,800 times 12 months). Real estate taxes with respect to the wife's property amounted to $1,146 and $1,274 in 1972 and 1973, respectively, bringing the total deductible amount, in the Government's view (the real estate taxes being deductible), to $22,746 in 1972 and $22,874 in 1973. On his 1972 and 1973 returns Blanchard claimed alimony deductions in the larger amounts of $31,000 and $33,000, respectively. The Internal Revenue Service (IRS) disallowed the sums of

---

1. At a hearing held on October 11, 1976, plaintiff stated that the form of the Government's submissions under Federal Civil Rule 56. was satisfactory to plaintiff. Those submissions contain, in addition to materials supporting the statement of facts set forth in the text of this opinion, explanations and copies of the forms pursuant to which the Government computed the additional assessment involved in the counterclaim. Plaintiff has not controverted any of the assertions made in those submissions.

$8,254 and $10,126, respectively, for 1972 and 1973.

Subsequent to the audit by IRS, plaintiff obtained on October 4, 1974 from the state court which granted the original divorce, a decree which, *inter alia*, increased the alimony payable for the years 1972 and 1973 to the levels claimed on the tax returns, $31,000 and $33,000, respectively, and ordered that the decree "be effective as of January 1, 1972." That latter order was filed after plaintiff in August, 1974 petitioned the state court to increase the alimony payments. In his petition plaintiff noted that "it was the understanding and agreement of the parties that plaintiff would increase alimony payments to defendant consistent with plaintiff's income and defendant's needs," and that "[i]n order to avoid litigation, plaintiff voluntarily increased alimony payments * * * [to] $31,000 in 1972 and $33,000 in 1973" and that he and his ex-wife had "agreed that said alimony payments for 1974 and subsequent thereafter, subject to further modification, shall be $30,000 per annum. In accordance with said understanding, plaintiff did pay to defendant the sum of $31,000 in 1972 and the sum of $33,000 in 1973."

Plaintiff timely filed his individual income tax returns for the years 1972 and 1973 and paid the taxes he computed as due. He thereafter paid the assessed taxes and interest in issue and timely filed claims for refund which were disallowed. Jurisdiction exists in this case pursuant to 28 U.S.C. §§ 1340 and 1346(a)(1).

After the complaint herein was filed, the IRS issued to plaintiff a notice of deficiency asserting its determination that Blanchard owed an additional $4,078 of 1973 tax, and interest thereon. That deficiency notice was intended merely to correct a mathematical error in the amount of tax due under the original assessment. Plaintiff waived his rights under Int.Rev. Code of 1954 § 7422(e) to have his liability adjudicated by the Tax Court, and consented to the immediate assessment and collection of the tax and interest due. The tax has now been assessed and, pursuant to Int.Rev.Code of 1954 § 7401, the Government has counterclaimed in the within case to recover the $4,078 of additional tax, and interest thereon. Plaintiff of course denies his liability for the additional tax and interest. However, there is no dispute between the parties as to the mathematical calculations or indeed as to anything other than the construction and application of the relevant statutory provisions.

Int.Rev.Code of 1954, § 215(a) provides:

*General rule.*—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

§ 71 provides, in part:

*(a) General rule.—*

*(1) Decree of divorce or separate maintenance.*—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic *payments* (whether or not made at regular intervals) *received after* such decree *in discharge of* (or attributable to property transferred, in trust or otherwise, in discharge of) *a legal obligation* which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

*(2) Written separation agreement.* —If a wife is separated from her husband and there is a *written separation agreement* executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received *after such agreement is executed* which are made under such agreement and because of the marital or family relationship (or which

are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.

*(3) Decree for support.*—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. (emphases added).[2]

The specific issue presented herein is whether a divorced taxpayer may deduct, pursuant to §§ 215(a) and 71(a)(1) & (2), payments made by check to his former wife in excess of the amounts of alimony owing at the time of the payments under an agreement between the husband and wife incorporated into the divorce decree, when an order entered in the divorce proceeding subsequent to the tax years in which the excess payments were made retroactively modified the amount of alimony owed so as to equal the amounts actually paid.

 Plaintiff argues that one or more of the individual checks by which he made the payments were "written instrument[s] incident to such divorce or separation" within the meaning of § 71(a)(1). That argument is not persuasive. In order for the payments in question to qualify, they must be payments made in discharge of a legal obligation which, because of the marital relationship, is imposed on or incurred by the husband under a written instrument incident to the divorce. To hold that a payment itself is a written instrument creating the legal obligation which the payment then discharges would be to make of

the simple expedient of writing a check a magical rite capable of dispelling all or most of the conditions precedent carefully set forth in Section 71.

 Plaintiff's counsel, after seeming to take a contrary position in his written submission to this Court, conceded during oral argument before this Court that plaintiff cannot prevail under § 71(a)(1) on a theory that the required legal obligation was created retroactively by the 1974 court decree. *See Van Vlaanderen v. Commissioner*, 175 F.2d 389 (3d Cir. 1949); *cf. Daine v. Commissioner*, 168 F.2d 449 (2d Cir. 1948). *But cf. Mavity v. Commissioner*, 341 F.2d 865 (2d Cir. 1965); *Gale v. Commissioner*, 191 F.2d 79 (2d Cir. 1951). That concession by plaintiff is well-founded. There must be in effect an enforceable obligation when an alimony payment is made to make such a payment deductible. To allow a taxpayer to alter his tax liability for years past by obtaining a *nunc pro tunc* modification of his alimony obligation would make it possible for a husband to shift income, during years of high earnings by him, to his former spouse without having incurred the type of permanent obligation contemplated by Section 71.

 Seeking to qualify under Section 71(a)(2), however, plaintiff asserts that in January 1972 he and his ex-wife orally agreed that the alimony should be increased, that thereafter he paid her alimony in accordance with that oral undertaking, and that such oral modification became effective when made. The Government does not dispute plaintiff's said factual assertions, but does contend that plaintiff's legal conclusion is erroneous. Plaintiff contends that the applicable statutes say nothing about oral modifications, that under the law of contracts, oral modifications to written agreements enjoy a greater status more than mere oral agreements, and that such oral modification of the type herein involved should be given full effect under the

---

**2.** The purpose of § 71(a)(2) appears to have been to extend the income shifting advantages previously given divorced and legally separated couples to couples who had separated under a

written agreement but who had not yet obtained, or who would never obtain a court decree. H.R.Rep. No. 1337, 83d Cong., 2d Sess. (1954), U.S.Code Cong. & Admin.News 1954, p. 4025.

tax law. Even assuming *arguendo* the correctness of plaintiff's analysis of the law of contracts, his construction of the applicable statutes does not wash. The words, "such agreement", as used in § 71(a)(2), refer back to the words "written separation agreement" earlier used in that same subsection.[3] The provisions of § 71(a)(1) relate to "payments * * * received *after* such decree in discharge of a legal obligation" (emphasis added).

Accordingly, defendant's motion for summary judgment will be granted.

3. It is thus unnecessary to determine herein whether, section 71(a)(2) is unavailable to someone like plaintiff whose written separation agreement seemingly became operative and effective only upon the issuance of a divorce decree.